**COMMITTEE IN SOLIDARITY WITH THE PEOPLE OF EL SALVADOR (CISPES), et al., Appellants,**

v.

**William F. SESSIONS, Director, Federal Bureau of Investigation, et al., Appellees.**

**No. 90–5179.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 20, 1991.

Decided April 12, 1991.

ipate in this matter.

James Klimaski were on the brief, Washington, D.C., for appellants.

R. Joseph Sher, Sr. Trial Counsel, Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., and Jay B. Stephens, U.S. Atty., were on the brief, Washington, D.C., for appellees.

Before SILBERMAN, WILLIAMS, and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

For more than two years, from 1983 to 1985, the Federal Bureau of Investigation investigated the Committee in Solidarity with the People of El Salvador (CISPES), several of its members, and individuals and groups associated with the organization. An informant, later found to be untrustworthy, had alleged that CISPES was involved in terrorist activities. No links to terrorism were ever uncovered. After determining that it had been acting on unreliable information, the FBI terminated the inquiry. By then the Bureau had collected a considerable amount of data about CISPES and its members.

In testimony before congressional committees, the Director of the FBI, William F. Sessions, said the investigation should never have been initiated, but denied that the Bureau had acted illegally in conducting the inquiry. Director Sessions notified the committees that several agents had been disciplined and that internal procedures had been revised to insure that such errors would not recur.

Thereafter, in 1988, CISPES, four other organizations, and eight individuals[1] brought this action against Director Sessions and the FBI. The complaint, as amended, alleged that the FBI conducted the investigation for the purpose of deterring plaintiffs from exercising their First Amendment right to protest the government's policy in Central America, that the

Alan H. Levine, with whom Melvin L. Wulf, Michael Ratner, New York City, and

1. Plaintiffs sought to bring the suit as a class action on behalf of "178 individuals and organizations" but the class was never certified.

investigation had this effect, that CISPES's membership declined during the investigation, and that plaintiffs were suffering irreparable harm as a result of the FBI's possession of information about them and its dissemination of such information to others. Plaintiffs claimed that defendants were violating their First Amendment rights to freedom of speech and association, as well as the Privacy Act of 1974, 5 U.S.C. § 552a. They sought a declaratory judgment and a "mandatory injunction" requiring the FBI to collect all FBI files and any "other federal agency files" relating to the CISPES investigation and to deposit these files in the National Archives "upon terms and conditions to be determined by the Court."

After the district court denied plaintiffs' motion for a preliminary injunction (705 F.Supp. 25 (D.D.C.1989)), defendants filed a motion to dismiss the case for lack of subject matter jurisdiction, Fed.R.Civ.P. 12(b)(1). While the motion was pending, the FBI entered into a written agreement with the National Archives transferring all of its CISPES files, including those held by its field offices and those resulting from "spin-off" investigations, to the Archives. The district court took note of the agreement and dismissed the complaint on the grounds that the case was moot and that plaintiffs lacked standing. 738 F.Supp. 544, 547–48 (D.D.C.1990).

■ The first question on appeal is whether, in light of the FBI's transfer of its files to the Archives, this continued to be a "case or controversy" under Article III of the Constitution. Plaintiffs' challenge to the constitutionality of the FBI's investigation could not alone satisfy the requirement. The investigation ended years ago. To pass judgment on its legality would be to render an advisory opinion unless there were current consequences. In injunction suits, plaintiffs usually must establish that the allegedly illegal actions of the past are causing or threatening to cause them present injuries. *E.g., O'Shea v. Littleton,* 414 U.S. 488, 495–96, 94 S.Ct. 669, 675–76, 38 L.Ed.2d 674 (1974); *cf. Sibron v. New York,* 392 U.S. 40, 88 S.Ct.

1889, 20 L.Ed.2d 917 (1968); *North Carolina v. Rice,* 404 U.S. 244, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971). Current or future harm serves to keep the controversy alive. If the possibility of continuing injury disappears while the lawsuit is pending, the complaint ordinarily should be dismissed as moot.

■ We shall assume the complaint presented a live controversy when plaintiffs filed it in 1988. But the alleged harm resulting from the FBI's possession of the information necessarily ceased when the FBI relinquished the files. It is of no consequence that the FBI, rather than destroying the files, turned them over to the Archives. That is the relief plaintiffs requested. Their complaint sought an order directing the FBI to deposit its CISPES files with the Archives under such "terms and conditions" as the court saw fit. Although the court did not impose the terms governing the transfer, the court did review the agreement and indicated that it would have granted no further relief if plaintiffs had prevailed on the merits.

It is therefore appropriate to presume that the agreement provided a sufficient remedy for the harm plaintiffs alleged. However, because the FBI acted voluntarily, without judicial compulsion, mootness also depended on there being little likelihood that the agreement would be undone. *United States v. Concentrated Phosphate Export Ass'n,* 393 U.S. 199, 203, 89 S.Ct. 361, 364, 21 L.Ed.2d 344 (1968); *see United States v. W.T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 897–98, 97 L.Ed. 1303 (1953); *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289 & n. 10, 102 S.Ct. 1070, 1074–75 & n. 10, 71 L.Ed.2d 152 (1982). Assessing that probability was "a matter for the trial judge," *Concentrated Phosphate Export Ass'n,* 393 U.S. at 204, 89 S.Ct. at 364, who determined that there was no basis for doubting that the FBI would honor the agreement and that all CISPES files, including those in the FBI's computer banks, were covered. Plaintiffs object that the court relied on representations made by the FBI and its Director to the court (and to Congress), rather than on

facts established in an adversary proceeding. But "it has been the settled practice" to accept such representations in determining whether a case presents a live controversy. *DeFunis v. Odegaard,* 416 U.S. 312, 317, 94 S.Ct. 1704, 1706, 40 L.Ed.2d 164 (1974); *Ehlert v. United States,* 402 U.S. 99, 107, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971). The district court thus properly found this aspect of the case to be moot.[2]

■ This still leaves plaintiffs' claim about information in the hands of other federal agencies, information plaintiffs wanted the FBI to retrieve and turn over to the Archives pursuant to court order. The district court dismissed this claim on the defendants' Rule 12(b)(1) motion, citing "mootness" and lack of standing, both of which it regarded as jurisdictional. Plaintiffs argue that the court's ruling, a portion of which is quoted in the margin,[3] actually was on the merits. They say this makes a procedural difference because a dismissal for failure to state a claim is improper if matters outside the pleadings "are presented to and not excluded by" the court. Rule 12(b), Fed.R.Civ.P. In that event, Rule 12(b) requires the court to treat the proceeding as one for summary judgment under Rule 56 and to give the parties an opportunity to present opposing material.[4] Plaintiffs contend they were deprived of this opportunity.

Even if plaintiffs are right that the court, in effect, dismissed their claim on the merits—that is, pursuant to Rule 12(b)(6)—their conclusion would not follow. The only materials outside the pleadings presented by the defendants were the agreement between the FBI and the Archives and a letter from Director Sessions to Senator Boren announcing the decision to transfer the records. These items had nothing to do with files in the possession of other agencies, which is the concern of this portion of plaintiffs' complaint. Rule 12(b) therefore did not require the court to convert this into a Rule 56 summary judgment proceeding. Once we pass that point, it makes little difference whether the court's dismissal of this claim is viewed as resting on lack of jurisdiction, the merits or a combination of the two. *See Sacks v. Reynolds Securities, Inc.,* 593 F.2d 1234, 1239 (D.C.Cir.1978); *Chiplin Enterprises, Inc. v. City of Lebanon,* 712 F.2d 1524, 1528–29 (1st Cir.1983). Equitable considerations and justiciability often tend to merge as the district court decides "whether the controversy is sufficiently live and concrete to be adjudicated and whether it is an appropriate case for equitable relief." *American Foreign Service Ass'n v. Garfinkel,* 490 U.S. 153, 161, 109 S.Ct. 1693, 1698, 104 L.Ed.2d 139 (1989) (per curiam).

■ Procedural considerations aside, we think the district court reached the correct result. Plaintiffs' supposed continuing injury was far too speculative to support the sort of extraordinary injunction they sought. They alleged that if other government agencies kept the information the FBI had supplied to them, the individual plaintiffs would have less of a chance to obtain government employment. Yet no plaintiff expressed any desire to engage in government employment. The district court therefore found the allegation of continuing harm far-fetched and we agree. *O'Shea v. Littleton,* 414 U.S. at 497–99, 94 S.Ct. at 676–78. "Injunctions ... will not issue to prevent injuries neither extant nor presently threatened, but only merely

---

**2.** Plaintiffs' claims under the Privacy Act were also rendered moot by the FBI's disposal of the records in its possession, which is the maximum injunctive relief to which plaintiffs would be entitled under the Act. *Reuber v. United States,* 829 F.2d 133, 147 (D.C.Cir.1987); *Metadure Corp. v. United States,* 490 F.Supp. 1368, 1375 (S.D.N.Y.1980).

**3.** As a practical matter, however, the defendants can only dispose of records over which they have custody or control. Information and records that the defendants have already

disseminated, *i.e.,* to other federal agencies or foreign governments, are beyond the disposal power of the defendants. Moreover, although other entities may have copies of the records, possession by these entities is not sufficiently related to plaintiffs' asserted injury to establish an actual case or controversy.
738 F.Supp. at 546.

**4.** There is no such constraint on the court when it is considering a motion to dismiss for lack of jurisdiction under Rule 12(b)(1). *Haase v. Sessions,* 835 F.2d 902, 906 (D.C.Cir.1987).

'feared.'" *Exxon Corp. v. FTC,* 589 F.2d 582, 594 (D.C.Cir.1978) (quoting *Connecticut v. Massachusetts,* 282 U.S. 660, 51 S.Ct. 286, 75 L.Ed. 602 (1931)), *cert. denied,* 441 U.S. 943, 99 S.Ct. 2160, 60 L.Ed.2d 1044 (1979); *Newhouse v. Probert,* 608 F.Supp. 978, 984 (W.D.Mich.1985).

Similar considerations warranted dismissal of this portion of the complaint under Rule 12(b)(6) for failure to state a claim upon which injunctive relief could be granted. Injunctions issue to prevent irreparable harm. *Beacon Theatres v. Westover,* 359 U.S. 500, 506–07, 79 S.Ct. 948, 954–55, 3 L.Ed.2d 988 (1959); *Wisconsin Gas Co. v. FERC,* 758 F.2d 669, 674 (D.C.Cir.1985). When there appears to be no real harm to prevent, a court is justified in refusing to provide such relief. Moreover, whether the mandatory injunction plaintiffs sought would accomplish anything was itself speculative. Other federal agencies, not the FBI, controlled the records. An injunction compelling them to turn over their files would have been improper since they were not parties to the lawsuit. *See* Rule 65(d), Fed.R.Civ.P.; *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 112, 89 S.Ct. 1562, 1570, 23 L.Ed.2d 129 (1969). The district court therefore properly dismissed this claim on the grounds that, "as a practical matter," the FBI controls only files in its possession and that, in any event, plaintiffs' asserted injury from the existence of these other files was too remote.

At oral argument, CISPES suggested that we should order the FBI to *request* (since it cannot compel) other agencies to return the relevant files. Yet the prospect of a court-ordered memorandum from the FBI asking a favor of other agencies seems an odd basis for launching a lawsuit. The chances that such "relief" would produce the ultimate result that CISPES seeks (transferral of all copies of the files to the Archives) is wholly speculative. At any rate, CISPES did not clearly argue for this relief in its appellate brief, so the issue is not properly before us. *See Carducci v. Regan,* 714 F.2d 171, 177 (D.C.Cir.1983).

*Affirmed.*