# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued January 25, 2019　　　　Decided March 15, 2019

No. 18-5074

PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, ET AL.,
APPELLANTS

v.

UNITED STATES DEPARTMENT OF AGRICULTURE AND ANIMAL
AND PLANT HEALTH INSPECTION SERVICE,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:17-cv-00269)

*Katherine Anne Meyer* argued the cause for appellants. With her on the briefs was *William N. Lawton*.

*John S. Koppel*, Attorney, U.S. Department of Justice, argued the cause for appellees. With him on the brief was *Mark B. Stern*, Attorney. *Michael S. Raab* and *Daniel Tenny*, Attorneys, entered appearances.

Before: GARLAND, *Chief Judge*, KATSAS, *Circuit Judge*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*: A coalition of animal rights advocates led by People for the Ethical Treatment of Animals (collectively "PETA") appeals the dismissal of their FOIA claims seeking records relating to animal welfare laws and regulations from the U.S. Department of Agriculture ("USDA"). Plaintiffs sued after the agency had removed certain records posted online, explaining its action in language consistent with an intention to restore them except for redactions required by privacy interests (but without a clear commitment to such restorations).

The district court dismissed all claims on varying grounds: (1) on the merits—as to certain issues not appealed; (2) on mootness with regard to material restored by USDA to the website, and (3) as to redactions from restored materials, on the ground that plaintiffs' complaint did not address them. We reverse on the last issue without reaching the merits, and we remand for further factual clarification bearing on plaintiffs' contention that USDA's voluntary cessation of unlawful activity renders mootness inapplicable. We affirm the district court's refusal to grant discovery against the agency.

* * *

Plaintiffs seek documents from the Animal and Plant Health Inspection Service ("APHIS"), the entity within USDA that administers the Animal Welfare Act ("AWA"), 7 U.S.C. §§ 2131 *et seq*., and is responsible for licensing and inspecting animal research facilities, among other things. Plaintiffs filed this suit shortly after USDA took down from its website a large swath of documents relating to AWA compliance. On February 3, 2017, USDA announced that, "during the past year," APHIS had been "conduct[ing] a comprehensive review of the information it posts" online. See USDA, Stakeholder Announcement: Updates to APHIS' Website Involving Animal Welfare Act and Horse Protection Act Compliance Information

(Feb. 3, 2017) (updated Feb. 15, 2017), https://www.aphis.usda.gov/aphis/newsroom/stakeholder-info/sa_by_date/sa-2017/sa-02/awa-hpa-compliance. The announcement stated that USDA was taking down a host of records with the aim of "remov[ing] certain personal information." *Id*. In doing so, the agency was "striving to balance the need for transparency with rules protecting individual privacy." *Id*. Though the announcement did not expressly say that the takedown was temporary or provide a timeline to repost records, the agency in this litigation describes the removal as "provisional[]," suggesting that "remov[ing] . . . personal information" is a task temporary in nature. See USDA Br. 6; see also J.A. 43 (USDA's motion to dismiss describing the takedown as "a temporary precaution"). The district court agreed, calling the removal "temporary" and "one-time," *People for Ethical Treatment of Animals, Inc. v. U.S. Dep't of Agric.* (*PETA I*), 285 F. Supp. 3d 307, 313 (D.D.C. 2018), though plaintiffs do not concede the point, see PETA Br. 31.

On February 13, 2017, plaintiffs filed this suit asking for declaratory and injunctive relief, invoking what is known as FOIA's "reading room" provision, 5 U.S.C. § 552(a)(2). That provision requires agencies to "make available for public inspection in an electronic format" five categories of documents. The complaint focuses on four types of records (as grouped by the district court) that the agency had removed: (1) research facility annual reports; (2) inspection reports; (3) lists of entities licensed under the AWA; and (4) regulatory correspondence and enforcement records that had not yet received final adjudication. See Compl. ¶¶ 1, 30; 285 F. Supp. 3d at 310–11.

Plaintiffs allege that they depend on these documents for, *inter alia*, scholarly endeavors, see Compl. ¶ 5, and wide-ranging advocacy work, including unearthing and correcting

AWA compliance violations, Compl. ¶ 24. The records at issue, plaintiffs allege, were "routine[ly]" made available "[f]or many years," Compl. ¶ 31, though admittedly with redactions in line with relevant FOIA exemptions, including for "personal privacy," Compl. ¶ 21; see 5 U.S.C. § 552(b)(6). PETA alleges that under § 552(a)(2) USDA must disclose all removed records, Compl. ¶ 34, and avers that requiring plaintiffs to file FOIA requests for these records under § 552(a)(3) would be onerous, exacerbating USDA's existing "substantial backlog" in processing FOIA requests. Compl. ¶ 27.

PETA asked for an order requiring that USDA "immediately" "make all . . . records" described in the complaint available by electronic means. It also sought a declaration that USDA had violated FOIA by removing the documents, along with an injunction ordering the agency to "make all such records available" to plaintiffs on an ongoing basis. Compl. 15.

For simplicity's sake, we exclude two groups of documents from further discussion: the entirety of category (4) above, and the portion of category (2) consisting of animal inventories. As to these, the district court dismissed plaintiffs' complaint under Rule 12(b)(6) on the ground that it failed to say why they were covered by 5 U.S.C. § 552(a)(2), but expressly made its ruling without prejudice. Plaintiffs do not appeal those rulings.

In granting USDA's motion to dismiss, the district court reasoned in three steps. See Table 1. First, as to categories (1)–(3) above, it concluded that "it appears" the agency had reposted the requested materials, apart from animal inventories in category (2). 285 F. Supp. 3d at 312. The court therefore dismissed PETA's claims under headings (1)–(3) as moot. It likewise rejected the possibility that the "voluntary cessation" doctrine negated USDA's claim of mootness. *Id.* at 313. The

district court cited the temporary nature of the removals along with statements made by USDA in its December 4, 2017, letter, see J.A. 235–39, responding to the district court's Minute Order of November 27, 2017. The letter outlines the agency's progress in reposting materials and states its plans as to future postings of existing and newly created records in certain categories of documents. In light of its ruling on mootness, the district court denied plaintiffs' request for discovery against the agency to probe its rationales for the takedown. 285 F. Supp. 3d at 315 n.7.

Second, the district court addressed the agency's redactions from the records taken down and then reposted. See USDA Br. 8, 11, 19; see also J.A. 236. Though plaintiffs objected to these redactions, the district court did not address their demands because, on its view, the complaint did not encompass those demands. 285 F. Supp. 3d at 313 n.3. Still, the court left the door open for PETA to "raise challenges to the redactions that now accompany these records," *id*., perhaps by amending its complaint or bringing another suit. (Plaintiffs did not amend their complaint.)

| Table 1<br><br>Documents Plaintiffs Seek from USDA on Appeal | | | |
|---|---|---|---|
| | **Category 1** | **Category 2** | **Category 3** |
| | Research facility annual reports | Inspection reports (with animal inventories) | Lists of entities licensed under AWA |
| **Reposted during litigation** | **Yes** | **Yes**<br>(but not animal inventories; new redactions in some documents) | **Yes**<br>(monthly list of active licensees, registrants; no real-time list) |
| **Agency's intent in Dec. 4, 2017, letter, J.A. 235–39** | "reposted all" records & "intends to continue posting," J.A. 236 | "now posting all" reports for recent 3-year period, J.A. 236 | "posting the monthly list of active (current) licensees," J.A. 237 |
| **District court disposition** | **Moot** | **Moot**<br>as to all but redactions<br><br>**Failure to plead**<br>as to new redactions | **Moot** |

Third, the court dealt with the items that for simplicity's sake we are not addressing here, as we explained above. As to them, plaintiffs have now filed a new lawsuit, which is not before us, pressing these and other claims, including their objections to USDA's latest redactions. See *People for the Ethical Treatment of Animals, Inc., et al. v. Sonny Perdue, et al.* (*PETA II*), No. 18-cv-887-CRC (D.D.C. filed Apr. 16, 2018).

This appeal, then, centers on reposted records—both with and without new redactions. We consider each in turn and remand for further proceedings.

\* \* \*

We first address reposted records diminished by new redactions. The district court declined to consider PETA's objections on this score because those objections were not "part of the complaint as filed," which focused, in the district court's view, on the "wholesale removal of the records." 285 F. Supp. 3d at 313 n.3. PETA contends that the district court erred. We agree.

To begin with, since the new redactions post-date the filing of the complaint, plaintiffs could have known of them at the outset of litigation only in the most general way, as a possibility of unknown scope. Cf. PETA Br. 39. More important, we think the complaint can't be reasonably read as demanding only that the agency be required to restore mutilated versions of documents previously published without redactions—at least without the redactions in question. It states that "records that for many years were easily accessible . . . are now no longer readily available to Plaintiffs," Compl. ¶ 31, and requests relief "immediately" making "*all* such records that have been removed available to Plaintiffs," Compl. 15 (emphasis added). The complaint, tellingly, is also not limited to talk of *records*.

It repeatedly speaks of *information*. And, as we have long said, FOIA's "focus . . . is information, not documents." *Kimberlin v. Dep't of Justice*, 139 F.3d 944, 950 (D.C. Cir. 1998) (quoting *Mead Data Central, Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977)). PETA alleges that "[d]efendants' decision to remove from APHIS's website the *information* that is required to be affirmatively disclosed . . . violates FOIA," Compl. ¶ 36 (emphasis added), and its "actions in removing such *information* . . . injure Plaintiffs by denying them immediate electronic access to such records," Compl. ¶ 37 (emphasis added). We read the complaint as demanding an order requiring USDA to repost documents in their *original*, *pre-takedown form*.

We thus remand to the district court to take up plaintiffs' objections to new redactions from the reposted records on the merits (including examining whether plaintiffs have satisfied FOIA's exhaustion requirements, 5 U.S.C. § 552(a)(6), and substantive provisions).

\* \* \*

We now turn to PETA's argument that USDA's reposting of records did not moot the case even as to materials *without* new redactions. Why so? PETA argues that USDA's actions and statements, taken as a whole, do not meet the high bar set by the "voluntary cessation" doctrine.

We review the district court's dismissal for lack of subject matter jurisdiction on mootness grounds de novo, see, e.g., *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 321 (D.C. Cir. 2009); the parties agree on that standard of review, see PETA Br. 26–27, USDA Br. 12. Though a motion to dismiss is ordinarily handled on the pleadings, a defendant's claim of voluntary cessation requires an evaluation of probabilities as to future conduct that can, as here, involve

detailed inquiry beyond the pleadings that is "a matter for the trial judge." *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 204 (1968). A related inquiry takes place, of course, whenever a plaintiff supplements the pleadings with affidavits to establish a court's jurisdiction. See *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987) ("In 12(b)(1) proceedings, it has been long accepted that the judiciary may make 'appropriate inquiry' beyond the pleadings to 'satisfy itself on authority to entertain the case.'" (quoting *Gordon v. Nat'l Youth Work Alliance*, 675 F.2d 356, 362–63 (D.C. Cir. 1982) (citations omitted))). Though the inquiry into voluntary cessation might be thought to invite a degree of deference to a district court's fact-finding role, our precedent appears not to recognize it. But cf. *Comm. in Solidarity with People of El Salvador (CISPES) v. Sessions*, 929 F.2d 742, 744–45 (D.C. Cir. 1991) (crediting, with limited analysis, a district court's factual findings as to voluntary cessation on a motion to dismiss). In any event, even with a more deferential posture, we would remand for further proceedings in this case for the reasons we explain below.

Typically, an end to offending behavior moots a case. But there are exceptions. As relevant here, "[m]ere voluntary cessation of allegedly illegal conduct does not moot a case," for a defendant may be "free to return to his old ways." *Concentrated Phosphate*, 393 U.S. at 203 (quotation marks and citation omitted in second phrase). But again, there is "an important exception to this important exception [to mootness]." *Troiano v. Supervisor of Elections in Palm Beach Cty., Fla.*, 382 F.3d 1276, 1283 (11th Cir. 2004). If a defendant can demonstrate that there is no reasonable expectation that the allegedly unlawful conduct will recur, the claim may be moot. "A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000). In that

event, the "'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness," *id*. (citation omitted)—here, the agency.

That general principle must be read in light of the "presumption of legitimacy accorded to the Government's official conduct," to which the Supreme Court has referred in the FOIA context. *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004). A "presumption of regularity supports the official acts of public officers and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *Id*. (quoting *United States v. Chemical Found. Inc.*, 272 U.S. 1, 14–15 (1926)). In analyses of "voluntary cessation," many of our sister circuits have been ready to give declarations by (or on behalf of) government officials—public servants sworn to uphold the law—somewhat higher credence than statements made by private parties. See, e.g., *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 325 (5th Cir. 2009) ("[G]overnment actors in their sovereign capacity and in the exercise of their official duties are accorded a presumption of good faith because they are public servants, not self-interested private parties. Without evidence to the contrary, we assume that formally announced changes to official governmental policy are not mere litigation posturing."), *aff'd sub nom. Sossamon v. Texas*, 563 U.S. 277 (2011); accord *America Cargo Transp., Inc. v. United States*, 625 F.3d 1176, 1180 (9th Cir. 2010); *Troiano*, 382 F.3d at 1283; *Ammex, Inc. v. Cox*, 351 F.3d 697, 705 (6th Cir. 2003); *Ragsdale v. Turnock*, 841 F.2d 1358, 1365 (7th Cir. 1988); see also *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1116 n.15 (10th Cir. 2010) (dictum to similar effect); 13C Wright, Miller & Cooper, *Federal Practice and Procedure* § 3533.7 (3d ed. 2008) (similar); cf. *Meeropol v. Meese*, 790 F.2d 942, 952 (D.C. Cir. 1986) (holding that affidavits of government officials are entitled to a presumption

of good faith in the context of locating responsive records to FOIA requests); *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981) (per curiam) (same).

PETA asserts that USDA has failed to satisfy the "voluntary cessation" doctrine. PETA Br. 28–36. The district court disagreed. It underscored the temporary nature of the removals and, relying on statements in USDA's letter of December 4, 2017, see J.A. 235–39, concluded that "there is no reasonable expectation the Department will remove the records again," 285 F. Supp. 3d at 313. Our view diverges from that of the parties and the district court. On the present record, we believe, there is not enough clarity fully to assess the agency's intentions with respect to future posting of certain categories of records.

The USDA letter is incomplete in key respects. It doesn't express the agency's position clearly enough to convince us that, as to *all* requested document types, it is "*absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur*," *Laidlaw*, 528 U.S. at 189 (emphasis added) (citation omitted)—even once we credit a presumption of regularity afforded to government parties.

Before addressing USDA representations as to each category, we note three pertinent elements of the context. *First*, USDA's aim in removing the records was to enhance privacy protections. Not only is this objective unproblematic in itself, but new administrations are entitled to reevaluate and modify agency practices, even longstanding ones. Cf. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 59 (1983) (Rehnquist, J., concurring in part, dissenting in part) ("A change in administration brought about by the people casting their votes is a perfectly reasonable basis for an executive agency's reappraisal of the costs and benefits of its programs and regulations."). *Second*, the district court

12

understood USDA's announcement of February 3, 2017, as implying the takedowns would be temporary. See 285 F. Supp. 3d at 313. ("[F]rom the beginning, the Department has indicated—and both parties have recognized—that the removal was a temporary measure"). USDA has lived up to this view by beginning to repost numerous records quite promptly. See *id*. at 311. *Third*, USDA did not shift its rationale after PETA filed suit or engage in "transitory litigation postur[ing]," *America Cargo Transp.*, 625 F.3d at 1180, or in the equivalent of what the Court has called "postcertiorari maneuvers," *Knox v. Serv. Employees Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012).

Proceeding by category, we address research facility annual reports, inspection reports (sans animal inventories), and lists of entities regulated under the AWA.

*Research Reports.* Here the agency has adequately expressed its forward-looking plans. "APHIS intends to continue posting annual reports going forward consistent with its practice prior to February 3, 2017." J.A. 236.

With respect to the remaining two categories, *inspection reports* and *entity lists*, however, the record is less certain. USDA explains that it "is now posting all inspection reports for the most recent three-year period," *id*., and says that "APHIS posts new inspection reports on a rolling basis," "limited to the most recent three-year period," J.A. 236–37. USDA's treatment of entity lists is similarly confined to a description of currently ongoing practice. It explains that it "is posting the monthly list of active (current) licensees and registrants that are regulated under the AWA on the agency's website," but doesn't broach future plans. *Id*. at 237.

Given the forward-looking character of the inquiry into a defendant's intent, these fall short of the necessary precision.

That is especially so given the agency's view that its ongoing postings are discretionary.  See USDA Br. 6, 12, 20.

Put differently, the December 4, 2017 letter's treatment of inspection reports and entity lists falls short of the kinds of statements that courts have credited in the very cases the agency cites.  See USDA Br. 18.  In one instance, government counsel committed an agency to a "new *permanent* policy" that "agreed with" plaintiff's position.  *America Cargo Transp.*, 625 F.3d at 1180 (emphasis added in first quotation).  In another context, a court found governmental "self-correction" that "appears genuine," *Ragsdale*, 841 F.2d at 1365, based on a "public policy of non-enforcement" of a requirement that was "barred by clear Supreme Court precedent," *id*. at 1365–66, and had "no real prospect" of repetition, *id*. at 1366.  In a third, a court laid stress on "formally announced changes to official governmental policy."  *Sossamon*, 560 F.3d at 325.  And in a fourth, the government gave exactly the "relief plaintiffs requested."  *CISPES*, 929 F.2d at 742.  Neither USDA's letter, nor the representations in its briefing or at oral argument, exhibits this level of clarity about inspection reports and entity lists.

We thus remand for clarification with respect to USDA's future plans to post inspection reports (apart from animal inventories) and lists of AWA regulated entities—and would have done so even had we accorded deference to factual findings of the district court.  If the agency makes clear that it commits to timely posting on an ongoing basis, such a declaration will moot PETA's non-redaction claims.

In light of USDA's seemingly unproblematic rationale for removing the records; the one-time nature of the takedown; the absence of any signs of bad faith in litigation; and a presumption of regularity when government officials express a clear intention to do as the complaint requests, we conclude that

a declaration by (or on behalf of) USDA officials that the agency intends to post documents in the inspection reports and entity lists categories on an ongoing basis will moot PETA's claims. This is so, we emphasize, even though USDA continues to assert that posting the records is a matter of discretion, rather than a FOIA-imposed duty (as plaintiffs would have it). Given our holding, we find that the district court did not abuse its discretion in denying plaintiffs' request for discovery against the agency aimed at showing that the "voluntary cessation" doctrine isn't met. See 285 F. Supp. 3d at 315 n.7; *Citizens for Responsibility & Ethics in Washington v. Office of Admin.*, 566 F.3d 219, 221 (D.C. Cir. 2009).

\* \* \*

To sum up, as to reposted records featuring new redactions, the complaint is most plausibly read as requesting that USDA repost *all* information that those records contained before their takedown. The district court should thus proceed to the merits on remand. As to "voluntary cessation," we affirm the mootness dismissal as to the research reports but remand for further elucidation as to the inspection reports and the entity lists. If the agency unambiguously commits to continued posting of those documents, plaintiffs' claims should be dismissed as moot, without discovery, even if USDA continues to regard its postings as voluntary.

*So ordered.*