**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-1678

HUMANE SOCIETY OF THE UNITED STATES; HUMANE SOCIETY INTERNATIONAL; CENTER FOR BIOLOGICAL DIVERSITY; BORN FREE USA,

        Plaintiffs - Appellants,

    v.

UNITED STATES FISH AND WILDLIFE SERVICE; UNITED STATES DEPARTMENT OF THE INTERIOR,

        Defendants - Appellees.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Liam O'Grady, Senior District Judge. (1:18-cv-01301-LO-JFA)

Argued: October 23, 2020               Decided: December 1, 2020

Before THACKER and QUATTLEBAUM, Circuit Judges, and Stephanie A. GALLAGHER, United States District Judge for the District of Maryland, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Neal David Mollen, Alexandria, Virginia, for Appellants. Catherine M. Yang, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellees. **ON BRIEF:** Anna Frostic, THE HUMANE SOCIETY OF THE UNITED STATES, Washington, D.C.; Tanya Sanerib, CENTER FOR BIOLOGICAL DIVERSITY, Seattle,

Washington; Charles A. Patrizia, Scott M. Flicker, Noah N. Simmons, PAUL HASTINGS LLP, Washington, D.C., for Appellants. G. Zachary Terwilliger, United States Attorney, R. Trent McCotter, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This case is about the alleged failure of a government agency to post information in a public online reading room. The Humane Society of the United States, Humane Society International, Center for Biological Diversity, and Born Free USA (collectively, "Appellants") filed the instant amended complaint ("Amended Complaint") against the United States Fish and Wildlife Service ("FWS") and the Department of the Interior (collectively, "Appellees"). Appellants seek to compel FWS to post permit and application documents created pursuant to the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531–44, regarding the import of trophy heads, hides, tusks, or other parts of African lions or elephants.

The Amended Complaint is premised on three alleged shortcomings by FWS: (1) its failure to post in an online reading room electronic copies of documents Appellants requested; (2) its "longstanding and ongoing refusal" to comply with disclosure requirements; and (3) its failure to properly index its ESA documents. J.A. 36.[1] Appellants allege that these shortcomings violate the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA") and the Administrative Procedure Act, 5 U.S.C. §§ 500, et seq. ("APA").

The district court dismissed the Amended Complaint for two reasons. First, the district court concluded Appellants' claims regarding failure to post materials online were moot because Appellants' requests for posting had been fulfilled. Second, the district court concluded Appellants failed to state a claim with regard to the prospective posting of

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

materials on an ongoing basis and the proper indexing of such materials. For the reasons that follow, we affirm the dismissal of the Amended Complaint.

## I.

## A.

## Legal Background

## 1.

## Freedom of Information Act

FOIA places on federal agencies "both reactive and affirmative obligations to make information available to the public." *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 846 F.3d 1235, 1240 (D.C. Cir. 2017). Agencies are compelled to publish certain categories of materials in the Federal Register, 5 U.S.C. § 552(a)(1); to make other types of materials "available for public inspection in an electronic format," *id.* § 552(a)(2); and to make all other records available upon request from a member of the public, *id.* § 552(a)(3). Under the more familiar provision of Section 552(a)(3), federal agencies must release records (with certain exceptions) upon a valid and sufficiently specific request by a member of the public. *See id.* § 552(a)(3)(A); *Prison Legal News v. Samuels*, 787 F.3d 1142, 1146 (D.C. Cir. 2015).

In subsection (a)(2), FOIA also imposes an affirmative duty on agencies to "make available for public inspection in an electronic format" the following five classes of records:

> (A) "final opinions, . . . as well as orders, made in the adjudication of cases," § 552(a)(2)(A);

4

(B) "those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register," § 552(a)(2)(B);

(C) "administrative staff manuals and instructions to staff that affect a member of the public," § 552(a)(2)(C);

(D) "copies of all records, regardless of form or format" that

(i) "have been released to any person" pursuant to § 552(a)(3); and

(ii) "that because of the nature of their subject matter, the agency determines have become or are likely to become the subject of subsequent requests for substantially the same records" or "that have been requested 3 or more times," § 552(a)(2)(D); and

(E) "a general index of the records" posted pursuant to subparagraph (D), § 552(a)(2)(E).

These provisions are known as FOIA's "reading room" provisions and are also sometimes collectively referred to as "eFOIA." *See, e.g.*, *Tax Analysts v. I.R.S.*, 117 F.3d 607, 609 (D.C. Cir. 1997); *Gov't Accountability Project v. U.S. Dep't of Health & Human Servs.*, 568 F. Supp. 2d 55, 58 (D.D.C. 2008). "If a document does not fall within one of these categories, then the agency has no affirmative obligation to post the document." *PETA v. U.S. Dep't of Agriculture*, 285 F. Supp. 3d 307, 314 (D.D.C. 2018), *aff'd in part, rev'd in part on other grounds*, 918 F.3d 151 (D.C. Cir. 2019).

Upon a request for records pursuant to subsections (a)(2) or (a)(3), the agency has 20 days (absent unusual circumstances) to respond. *See* 5 U.S.C. § 552(a)(6)(A). If the agency decides to comply with the request, it must make the records "promptly available to such person making such request." *Id.* § 552(a)(6)(C)(i).

5

If a requester is not satisfied with the agency's response to its requests, it may file a complaint in "the district court of the United States in the district in which the complainant resides . . . or in which the agency records are situated." 5 U.S.C. § 552(a)(4)(B). In such a case, "the burden is on the agency to sustain its action," but "a court shall accord substantial weight to an affidavit of an agency concerning the agency's determination as to technical feasibility [of disclosing the documents]." *Id.* The district court "has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." *Id*.

2.

Endangered Species Act

Generally, hunters wishing to import into the United States certain trophy animals from Africa, including African elephants and lions, must first submit an application to, and obtain an import permit from, FWS. The application requires information such as demographic details about the applicant, where the animal will be hunted, which safari or outfitting company will be used, and details about the fees that will be paid for the hunt.

Once an application is submitted, FWS makes certain determinations on a case-by-case basis, as required by two laws and their corresponding regulations: the ESA, 16 U.S.C. §§ 1531–44, and the Convention on International Trade in Endangered Species of Wild Fauna and Flora ("CITES"), Mar. 3, 1973, 27 U.S.T. 1087; *see* 16 U.S.C. § 1538(c)(1) (incorporating CITES into domestic law through the ESA). These laws and their regulations allow FWS to issue permits to import trophies of certain African elephants and lions upon a determination that "the killing of the trophy animal will enhance the survival

6

of the species" (known as "enhancement determinations"), 50 C.F.R. § 17.40(e)(6)(i)(B), and that trade in the species is "non-detrimental" to the species (known as "non-detriment determinations"), *id.* § 23.61(a); *see also* 50 C.F.R. § 17.32(a) (requirements for permits generally).

B.

Procedural History

1.

Complaint and Amended Complaint

According to the Amended Complaint, on May 18, 2018, Appellants sent FWS a letter requesting that FWS post in the agency's online FOIA reading room the following: (1) "copies of all ESA permits issued since January 1, 2016 or in the future for the import of trophies of African elephant or threatened African lions"; (2) "all permit application materials for such permits (prior to permit issuance or denial moving forward)"; and (3) "all enhancement findings supporting the issuance or denial of such permits." J.A. 56–57. According to Appellants, "[i]n response, FWS neither posted the requested material online nor provided any substantive explanation of its refusal to do so." *Id.* at 57.

On October 18, 2018, Appellants filed the initial complaint in this case, asking for the requested FWS documents to be posted pursuant to eFOIA's online reading room posting requirements, 5 U.S.C. § 552(a)(2). Appellees filed motions to dismiss that complaint on January 4, 2019. In the motions, Appellees pointed out that some of the records at issue were not within eFOIA's scope because they had not been both requested three times *and* actually released to anyone pursuant to § 552(a)(2)(D). *See* Mem. Supp.

7

Mot. Dismiss at 16, *Humane Soc'y v. U.S. Fish & Wildlife Serv.*, No. 1:18-cv-1301 (E.D. Va. filed Jan. 4, 2019), ECF No. 21.

According to Appellants, "[t]o forestall expensive discovery and an unnecessary factual dispute about the breadth and number of Section 552(a)(3) requests made by [Appellants] and others since 2016," they responded "by serving new, gap-filling Section 552(a)(3) requests, encompassing all relevant records for the entire period from 2016 to the present." Appellants' Br. 49 (footnote omitted). Appellants called this a "belt-and-suspenders" approach to obtain posting of the requested records. *Id.* Appellees, in contrast, characterize Appellants' new requests as being made to "cover the flaws in their prior submissions." Appellees' Br. 12. Either way, it is undisputed that after the initial complaint was filed, Appellants made more FOIA requests under subsection (a)(3) in order to invoke the provisions of eFOIA requiring that the records be "requested 3 or more times" before they must be posted in the reading room. § 552(a)(2)(D)(ii).

After these requests were made, Appellants filed the Amended Complaint on January 24, 2019, claiming that Appellees' failure to post the requested permitting materials online violates eFOIA and the APA. This claim is premised on the initial FOIA requests, the new "belt-and-suspenders" requests, and is purportedly supported by the following allegations:

> (1) FWS exhibits an "ongoing pattern and practice of failing to comply with eFOIA by not proactively posting copies of all African elephant . . . or African lion . . . trophy import permits or associated findings issued after January 22, 2016 in their online library";

8

(2) FWS has failed to disclose in its online library: "copies of all ESA or CITES permits issued since January 1, 2016 or proactively for the import of trophies of African elephant . . . or African lions . . ."; "all permit application materials for such permits (prior to permit issuance or denial for those not yet issued or denied)"; and "all enhancement and non-detriment findings supporting the issuance or denial of such permits." According to Appellants, "[t]hese three categories of records have been requested far more than three times and have been released in the past pursuant to FOIA requests"; and

(3) FWS has "only posted a few relevant existing records, and the agency has failed to provide an index or guide to these records as required under eFOIA."

J.A. 63–64. Appellants request the following relief:

- A declaration that FWS "violated FOIA by failing to post in FWS' online reading room[] ESA and CITES permit applications and related materials pertaining to trophy imports of threatened African elephants . . . or lions . . . submitted or created on or after January 1, 2016, records of decision for such permits, and enhancement and non-detriment findings supporting the issuance or denial of such permits, and that [FWS] has otherwise failed to comply with its FOIA obligations.";

- An injunction ordering FWS "immediately to make available via FWS' online reading room all existing records related to ESA and CITES permit application materials pertaining to trophy imports of threatened African elephants . . . or lions . . . submitted on or after January 1, 2016, records of decision for such permits, and enhancement and non-detriment findings supporting the issuance or denial of such permits";

- An injunction ordering FWS to make ESA and CITES records "available [on an ongoing basis] electronically and in a timely manner after the receipt or creation of such records via FWS' online reading room, consistent with the eFOIA provision"; and

- An injunction ordering FWS "to provide an index or guide to the records it has posted and hereafter posts online pursuant to eFOIA."

J.A. 65–66.

Appellants aver that FWS's "failure to comply with eFOIA harms [Appellants'] and their members' interests in ensuring that the Endangered Species Act and CITES requirements for importing threatened elephant and lion hunting trophies are strictly implemented." J.A. 64. Therefore, Appellants brought their claim pursuant to FOIA, 5 U.S.C. § 552(a)(4)(B). But, alternatively, Appellants claim the APA provides judicial review of "every final agency action for which there is no other adequate remedy in a court." J.A. 64 (quoting 5 U.S.C. § 706). Thus, "[i]f . . . the judicial review provisions of the FOIA are unavailable or inadequate to reach [Appellees'] violations of law fully, the APA provides that remedial authorization." *Id.*

2.

District Court's Dismissal

On February 22, 2019, Appellees filed two motions to dismiss the Amended Complaint: one based on mootness pursuant to Federal Rule of Civil Procedure 12(b)(1), and one based on failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). With its briefing, Appellees submitted two sworn declarations confirming that FWS had performed multiple searches and that all requested records from January 1, 2016, to February 20, 2019, had been posted online. *See* J.A. 84–85 (February 22, 2019 Declaration of Connie Rose, FWS FOIA officer), 216–17 (April 2, 2019 Declaration of Cathy Willis, FWS FOIA officer).

10

On May 16, 2019, the district court granted Appellees' motions and dismissed the Amended Complaint. First, the district court concluded the claim based on requests for existing records was moot and thus, it lacked jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. In this regard, the district court made a factual finding that, after the Amended Complaint was filed, Appellees "fulfilled [Appellants'] FOIA requests" for the permits issued from January 1, 2016, to the time of the decision. J.A. 250.

The district court also addressed Appellants' argument that "despite the release of the records," Appellees' actions "amount[ed] to voluntary cessation" that would "not moot the case." J.A. 252. It rejected this voluntary cessation argument, explaining Appellants submitted the belt-and-suspenders requests for applications and permits dating back to January 1, 2016, after litigation had begun, and Appellees "complied with [those] requests." *Id.* Thus, the doctrine of voluntary cessation does not apply because it was Appellants' "own doing" that "sap[ped] the controversy of vitality." *Id.* (quoting *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n.l (2001)).

Second, the district court dismissed the proactive posting claim for failure to state a claim pursuant to Rule 12(b)(6). It rejected Appellants' argument that FWS was required to proactively post certain documents to the FWS reading room, explaining, "[Section] 552(a)(2)(D) does not require agencies to post records on a rolling basis into the future." J.A. 253. The district court concluded that language of the statute "indicates [the disclosure requirement] is referring to information that already exists, not information that will be created in the future." *Id.*

11

Finally, in a footnote, the district court addressed the claim regarding FWS's allegedly insufficient indexing system, explaining that there was no case law on the topic, and it deemed organizing records "by animals," as FWS did here, a sufficient "general index" pursuant to FOIA. J.A. 252 n.1.

The district court did not address Appellants' APA arguments and gave no explanation for its failure to do so.

## II.

We review mootness questions de novo. *See Porter v. Clarke*, 852 F.3d 358, 363 (4th Cir. 2017). "We review the district court's dismissal of [a] complaint de novo, accepting as true all of the factual allegations contained in the complaint and drawing all reasonable inferences in favor of the plaintiff." *Wright v. North Carolina*, 787 F.3d 256, 263 (4th Cir. 2015) (internal quotation marks omitted).

## III.

As mentioned, the Amended Complaint is based on three alleged shortcomings of FWS: (1) its failure to post in an online reading room electronic copies of documents Appellants requested; (2) its "longstanding and ongoing refusal" to comply with disclosure requirements; and (3) its failure to properly index its ESA documents. J.A. 36. We address each in turn.

## A.

### Alleged Failure to Post Records

We first address the district court's conclusion that the claims regarding FWS's failure to post certain records is now moot.

1.

"The doctrine of mootness constitutes a part of the constitutional limits of federal court jurisdiction," *Porter v. Clarke*, 852 F.3d 358, 363 (4th Cir. 2017) (alterations and internal quotation marks omitted), which extends only to actual cases or controversies, U.S. Const. art. III, § 2. When "a case or controversy ceases to exist -- either due to a change in the facts or the law -- the litigation is moot, and the court's subject matter jurisdiction ceases to exist also." *Porter*, 852 F.3d at 363 (internal quotation marks omitted). Put another way, "a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969); *see also Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) ("Mootness has been described as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980))).

However, there is a "well-recognized exception to the mootness doctrine holding that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" *Porter*, 852 F.3d at 363 (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)); *see also United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953) ("[V]oluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot.").

13

The voluntary cessation exception "traces to the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior." *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n.1 (2001). Accordingly, the exception seeks to prevent "a manipulative litigant immunizing itself from suit indefinitely, altering its behavior long enough to secure a dismissal and then reinstating it immediately after." *Porter*, 852 F.3d at 364 (internal quotation marks omitted); *see also Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012) ("The voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed."). Thus, "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Porter*, 852 F.3d at 364 (internal quotation marks omitted).

2.

Appellants argue a live controversy still exists, maintaining that there remains "a factual dispute regarding FWS's claim that it has posted to its website all of the documents it currently has." Appellants' Br. 45–46. In addition, Appellants contend that "[e]ven as to records FWS has already posted, the agency's frenzied, post-litigation production-and-posting effort has not mooted the case" because a "'defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" *Id.* at 14 (quoting *City of Mesquite*, 455 U.S. at 289).

14

a.

Issues of Fact

Appellees contend this case is moot because Appellants "received their requested relief: the trophy records back to 2016, organized by general index, were posted online in FWS's reading room" and what Appellants seek is "an advisory opinion about how to interpret the reading-room provisions." Appellees' Br. 16, 17. Appellants, however, contend the case is not moot because issues of fact remain as to whether all the records in FWS's possession have actually been posted. Thus, crucial to the mootness question is whether the records Appellants requested to be posted have, in fact, been posted. This issue can be resolved as a matter of law based on burdens and presumptions set forth in applicable law.

"When, as here, a defendant challenges the existence of subject matter jurisdiction in fact, the plaintiff bears the burden of proving the truth of such facts by a preponderance of the evidence." *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009). Coupled with Appellants' burden is the idea that "declarations by (or on behalf of) government officials [receive] somewhat higher credence than statements made by private parties" in FOIA cases, lending such declarations a "presumption of legitimacy." *PETA v. U.S. Dep't of Agriculture*, 918 F.3d 151, 157 (D.C. Cir. 2019). This presumption can only be refuted by "clear evidence to the contrary." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004). "[T]he [FOIA] requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Id.*

15

Finally, the district court made a finding that Appellees "fulfilled [Appellants'] FOIA requests" for the permits issued from January 1, 2016, to the date of that decision. J.A. 250. "On appeal from a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), we review the district court's factual findings with respect to jurisdiction for clear error . . . ." *In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 333 (4th Cir. 2014) (internal quotation marks omitted).

In short, Appellants have not overcome these burdens.

First, Appellants rely on a binder they took to the motion to dismiss hearing, "so that the court could see for itself which records had not been posted." Appellants' Br. 53. According to Appellants, the binder contained records not posted online but nonetheless turned over to Appellants. Following is an excerpt from that hearing:

> [Appellants' Counsel:] Your Honor, I have got a binder here of 90-some documents, or 89 documents I think it is, that were produced to us in response to our FOIA requests, but were not loaded up on the Web site. We're happy to provide them to the Court. It can do its own investigation unaided by an index, and I can tell you that it is [in]credibly time-consuming.

J.A. 225. Appellees' counsel, in response, remarked that those documents were disclosed "in response to another batch of requests [Appellants] submitted a few weeks ago asking for January to March 2019 documents." *Id.* at 244. As the district court was closing the hearing, Appellants' counsel asked, "Your honor, is there any purpose in leaving this [the binder] with your staff?" to which the district court replied, "No, but it was not refuted by [Appellees' counsel] that that's what the contents were, as you stated." *Id.* at 248. But the district court made no specific finding and no firm resolution as to the contents of the

16

binder, and this vague aside to Appellants' counsel is insufficient grounds upon which to find clear error, particularly given Appellees' sworn declarations and Appellants' burden to establish jurisdiction in the first place.

Importantly, Appellants have not alleged (and do not argue on appeal) that the requests they made and the documents turned over in the binder meet the requirements for posting to the eFOIA reading room. And to the extent Appellants fault Appellees for posting materials in dribs and drabs, they have also admitted that some of these disclosures were in response to *their own successive requests* made after the filing of the initial complaint. *See, e.g.*, J.A. 246–47 (Appellants' attorney: "It's true that a great many of the documents that were posted last night [before the motion to dismiss hearing] were responsive to a request that we made in March. So full credit to the Government on that."). And in their opening brief, Appellants merely claim that they "represent[]" to the court that as of the time of the filing of the brief, the requested records in the binder had not been posted online. Appellants' Br. 9 n.10. They also fall back on the inference that, if FWS has failed to post records before, they probably failed to post records again.

But it is well established that mere speculation or inferences, without more, cannot even create a genuine issue of material fact, *see Barwick v. Celotex Corp.*, 736 F.2d 946, 963 (4th Cir. 1984), let alone provide grounds for finding the requisite clear error here. Appellants therefore do not successfully challenge the district court's conclusion that the aspect of the Amended Complaint dealing with past actions is moot.

For these reasons, Appellants have not carried their burden to demonstrate "clear evidence" that any of their requests were not posted in the reading room, nor have they

17

demonstrated the district court clearly erred in so finding. *Favish*, 541 U.S. at 174; *see Burn Pit Litig.*, 744 F.3d at 333. Therefore, we must accept that Appellees have posted online all of Appellees' requested documents, rendering any claim with regard to past requests for online posting to be moot.

b.

Voluntary Cessation

Appellants next contend that, even if the records have been posted, the voluntary cessation exception to the mootness doctrine applies. Appellants contend the district court's decision -- that Appellants' own actions in re-requesting the documents after the initial complaint was filed led to mootness -- "represents a confused application of the voluntary cessation cases." Appellants' Br. 50. Rather, they maintain they "have surrendered nothing. After years of delay, FWS grudgingly produced and posted some documents, but only because it had been sued," and the agency "has not promised to refrain from similar statutory violations in the future." *Id.* at 51–52.

In response, Appellees rely on *PETA v. United States Department of Agriculture*, which held that the voluntary cessation doctrine could be defeated "by an agency declaration asserting an intention not to remove the relevant documents from the agency's web site in the future," Appellees' Br. 24 (citing 918 F.3d at 159), and Appellees produced such a document, *see* J.A. 217 (FOIA officer declaring, "FWS has no intention of removing the [ESA] Applications, Permits, and Findings concerning lions and elephant trophies from its online reading room in the future"). In any event, Appellees contend, the voluntary cessation theory "makes no sense in the FOIA context because FWS already turned over

18

the records to [Appellants] and cannot 'cease' that activity in the future." Appellees' Br. 26. In other words, there is no way Appellees can "resum[e] the challenged conduct" of failing to post records when they have already posted the records. *Id.* at 27 (quoting *Knox*, 567 U.S. at 307).

With regard to the previously requested and posted documents, this case is an ill fit for the voluntary cessation doctrine. For one thing, the district court was correct that Appellants' own actions of re-requesting documents and asking that they be posted effectively mooted their claims. Because Appellees "complied with [those] requests," Appellants' "own doing" "sap[ped] the controversy of vitality." *City News*, 531 U.S. at 284 n.l.

Furthermore, the voluntary cessation exception seeks to prevent "a manipulative litigant immunizing itself from suit indefinitely, altering its behavior long enough to secure a dismissal and then reinstating it immediately after." *Porter*, 852 F.3d at 364 (internal quotation marks omitted). But the challenged action here is FWS's failure to post requested documents, and those documents have now been posted. Theoretically, if FWS "alter[ed] its behavior" by posting the documents and swearing that it would not remove those documents (which FWS did), there is no way it could "reinstat[e]" that behavior afterwards. *Id.* Indeed, Appellants do not contend that FWS removed or will remove records it already posted. For these reasons, the voluntary cessation doctrine does not apply, and we affirm the dismissal of Appellants' claims based on FWS's alleged failure to post material to its reading room.

19

B.

Alleged Longstanding and Ongoing Refusal to Post

We now turn to the Amended Complaint's requests for injunctive relief based on an alleged "longstanding and ongoing refusal" of FWS to post documents to its reading room. J.A. 36. Central to their requested relief is Appellants' view that Appellees believe they have "no obligation to post the opinions, orders, or frequently requested documents it generates proactively [and] the lawfulness of that position must be determined." Appellants' Br. 45. Appellants ask the court to order Appellees to "make the [elephant and lion permit] records" available "on an ongoing basis" "electronically and in a timely manner *after the receipt or creation of such records*." J.A. 65 (emphasis supplied).

"[A] Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Even if a cause of action exists, a "complaint might nevertheless be dismissed under Rule 12(b)(6) unless it can be determined that judicial relief is available." *Davis v. Passman*, 442 U.S. 228, 244 (1979). In this case, FOIA does not entitle Appellants to the prospective relief they seek as to documents *not yet in existence*. FOIA provides that the district court "has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). As the district court observed, the language of the statute "indicates [the disclosure

20

requirement] is referring to information that already exists, not information that will be created in the future." J.A. 253. Even the case relied on by Appellants for this proposition demonstrates this point. In *Animal Legal Defense Fund v. United States Department of Agriculture*, the Ninth Circuit concluded that Section 552(a)(4)(B) "cloaks district courts with the authority to order an agency to post records in an online reading room," and "authorizes district courts to stop the agency from holding back records it has a duty to make available, which includes requiring an agency to post § 552(a)(2) documents online." 935 F.3d 858, 869 (9th Cir. 2019). However, that case dealt with *existing* agency records that had been *removed* from online reading rooms and a representation from an agency on appeal that "it [would] no longer post" certain of those records -- not nebulous records that have not yet come to fruition. *Id.* at 864. And we have stated that courts are "woefully ill-suited . . . to adjudicate generalized grievances asking us to improve an agency's performance or operations." *City of New York v. U.S. Dep't of Def.*, 913 F.3d 423, 431 (4th Cir. 2019).

By our narrow decision, we do not hold that Appellants can never receive injunctive relief pursuant to Section 552(a)(4)(B). But where all Appellants' eFOIA requests have been satisfied (per the district court's finding), and the prospective relief sought is with regard to documents not yet created, we fail to see how FOIA provides any "entitle[ment] . . . to relief." *Edwards*, 178 F.3d at 244. Therefore, we affirm the district court's Rule 12(b)(6) dismissal.

21

## C.

### Allegedly Improper Indexing

Finally, Appellants' claim that FWS improperly indexed its records suffers from the same fatal flaw as their claim for prospective relief. There is no reasonable reading of the remedial provision that demonstrates entitlement to relief based upon the sufficiency of a FOIA index. In any event, the statute requires a "general index," § 552(a)(2)(E), which it does not define. The records in this case are delineated by species, and Appellants cite no persuasive authority that this is somehow insufficient. Therefore, this claim fails to state a plausible claim for relief as well.

## D.

### The Administrative Procedures Act

Appellants contend that if no other source of remedy exists in FOIA, then the APA provides for review in situations "for which there is no other adequate remedy in a court." 5 U.S.C. § 704. The district court did not address the APA in its dismissal order, but we are compelled to affirm dismissal under that body of law as well.

In this court's recent decision in *City of New York v. United States Department of Defense*, major cities across the country filed suit against the Department of Defense ("DOD") for its failure to provide records in a timely and organized manner to the National Instant Criminal Background Check System. 913 F.3d at 426. The cities asked the district court to compel "more thorough compliance" by the DOD. *See id.* at 427. We affirmed the dismissal of the claim, rejecting the notion that the "APA authorizes a recipient of government information to initiate a private action to compel governmental conduct that

22

might improve that information's accuracy or comprehensiveness." *Id.* at 430. And "there is simply no basis in the APA's text for such a broad incursion into internal agency management." *Id.* In short, the city plaintiffs failed to "identify specific and discrete governmental conduct" for review, as provided in the APA, and rather, "launch[ed] a broad programmatic attack on the government's operations." *Id.* at 431 (internal quotation marks omitted).

So too here. Because the records Appellants requested have been posted, Appellants are left with a challenge to the internal management of FWS and how and when it posts trophy records -- or even more questionable -- how they may or may not manage such information in the future. Therefore, any claims made pursuant to the APA fall short.

IV.

For the foregoing reasons, we affirm the district court's dismissal of the Amended Complaint.

*AFFIRMED*