**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 19-6871**

---

DEVION GENTRY,

       Plaintiff – Appellant,

    v.

A. DAVID ROBINSON, Individually and in his official capacity; HENRY J. PONTON, Individually and in his official capacity; MAJOR BATEMAN; CAPTAIN D. H. ANDERSON; LT. WILLIAMS, Individually and in his official capacity; LT. WARD, Individually and in his official capacity; SGT. BOYD, Individually and in his official capacity; SGT. SWANN, Individually and in his official capacity; JOHN DOE, Individually and in his official capacity,

       Defendants – Appellees,

    and

VIRGINIA DEPARTMENT OF CORRECTIONS; NOTTOWAY CORRECTIONAL CENTER,

       Defendants.

------------------------------------------------------

PROFESSORS AND PRACTITIONERS OF PSYCHIATRY, PSYCHOLOGY, AND MEDICINE; DICK MORGAN, Former Corrections Official; DAN PACHOLKE, Former Corrections Official; PHIL STANLEY, Former Corrections Official; ELDON VAIL, Former Corrections Official; MUSLIM ADVOCATES,

       Amici Supporting Appellant.

---

Appeal from the United States District Court for the Eastern District of Virginia at Alexandria. Liam O'Grady, Senior District Judge. (1:17-cv-00766-LO-IDD)

Argued: October 29, 2020          Decided: December 7, 2020
Amended: December 8, 2020

Before WILKINSON, HARRIS, and RICHARDSON, Circuit Judges.

Affirmed in part, vacated in part, and remanded by unpublished opinion. Judge Harris wrote the opinion, in which Judge Wilkinson and Judge Richardson joined.

**ARGUED:** Stephen Richard Shaw, GOODWIN PROCTER LLP, Washington, D.C., for Appellant. Laura Haeberle Cahill, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees. **ON BRIEF:** Kevin P. Martin, Boston, Massachusetts, Jaime A. Santos, GOODWIN PROCTER LLP, Washington, D.C.; Tony Balkissoon, Washington, D.C., Daniel M. Greenfield, RODERICK AND SOLANGE MACARTHUR JUSTICE CENTER, Chicago, Illinois, for Appellant. Mark R. Herring, Attorney General, Victoria N. Pearson, Deputy Attorney General, Toby J. Heytens, Solicitor General, Martine E. Cicconi, Deputy Solicitor General, Michelle S. Kallen, Deputy Solicitor General, Jessica Merry Samuels, Assistant Solicitor General, Zachary R. Glubiak, John Marshall Fellow, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees. Elizabeth Hagerty, William Burgess, Claudia Pare, Washington, D.C., Allen P. Pegg, HOGAN LOVELLS US LLP, Miami, Florida, for Amici Former Corrections Officials Dan Pacholke, Phil Stanley, Dick Morgan, and Eldon Vail. Matthew W. Callahan, MUSLIM ADVOCATES, Washington, D.C., for Amicus Muslim Advocates. Michael P. Doss, SIDLEY AUSTIN LLP, Chicago, Illinois, for Amici Professors and Practitioners of Psychiatry, Psychology, and Medicine.

Unpublished opinions are not binding precedent in this circuit.

2

PAMELA HARRIS, Circuit Judge:

Consistent with his religious beliefs, Devion Gentry, an observant Sunni Muslim, wishes to grow and maintain a beard while in the custody of the Virginia Department of Corrections. Upon intake, however, prison officials forcibly trimmed Gentry's beard, consistent with the Department's grooming policy. And for the next three years, as a condition of growing a beard, Gentry was required to live in a special unit with significant restrictions on his daily activities.

Gentry filed a pro se complaint challenging the Department's grooming policy. At issue on appeal are three of Gentry's claims. Gentry first alleged that the grooming policy impermissibly burdened his right to religious practice under both the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and the First Amendment's Free Exercise Clause. Gentry also alleged that the grooming policy was discriminatorily enforced against religious objectors, in violation of the Fourteenth Amendment's Equal Protection Clause.

The district court granted summary judgment to the defendant prison officials on all counts. We now affirm in part and vacate in part the district court's judgment. As explained below, Gentry's RLUIPA and equal protection claims require further analysis, best undertaken by the district court in the first instance. Gentry's claim for damages under the Free Exercise Clause, however, is barred by qualified immunity, and so we affirm the district court's judgment for the defendants in that respect.

3

# I.

## A.

Devion Gentry is incarcerated in the custody of the Virginia Department of Corrections (the "Department" or "VDOC"). An observant Sunni Muslim, Gentry is compelled by his faith to maintain a beard, and views trimming his beard to the length permitted by VDOC's grooming policy – at various times, ¼ or ½ inch – as a violation of his religious duty. Accordingly, when he was taken into VDOC custody in July 2016, Gentry informed officials at the Nottoway Correctional Center ("Nottoway") that "it was against [his] religion to shave [his] beard." J.A. 11.

At the time, VDOC's grooming policy, Operating Procedure 864.1, required that, on the day of intake, "every offender . . . receive a haircut and a shave or trim to ¼ inch beard." J.A. 76. The policy authorized the use of "reasonable force or restraints" to shave a non-compliant offender, *id.*, and made no exception for religious objectors. Consistent with that policy, and over Gentry's stated religious objection, prison officials forcibly shaved his beard. Department officials then placed Gentry temporarily into a segregated housing unit, as a sanction for refusing to shave.

Several months later, Gentry was transferred to VDOC's special segregated unit for prisoners out of compliance with the grooming policy: the Grooming Standards Violator Housing Unit ("VHU") at Wallens Ridge State Prison. That unit housed, among others, those who refused for religious reasons to trim their beards to the ¼ inch – or, later, ½ inch – permitted by VDOC. There is no question, as our court has noted already, that this restrictive placement penalized individuals, including religious objectors like Gentry, for

4

their non-compliance with the grooming policy. *See Greenhill v. Clarke*, 944 F.3d 243, 252 (4th Cir. 2019). The stated purpose of the VHU was to "[m]otivate offenders to comply[,]" in part by "ensuring there [we]re consequences for willfully disobeying" the grooming policy. J.A. 84. Those consequences included significant limits on the time prisoners could spend outside their cells and the visitors they could see.

When Gentry filed suit in 2017, he was living in the VHU, put to "the choice between staying in restrictive housing or violating his faith by shaving his beard." *See Greenhill*, 944 F.3d at 252. But after the district court ruled on Gentry's case, VDOC in 2019 introduced a new grooming policy that eliminated both the "across-the-board" prohibition on "beards beyond a specified length" and the VHU. *Id.* at 248. Now, individuals in VDOC custody are "permitted freedom in personal grooming," so long as their hair and beards do not promote gang identification or pose a health hazard and have not been used to hide contraband or disguise their identities. *Operating Procedure 864.1*, Va. Dep't of Corr. at 4, https://vadoc.virginia.gov/files/operating-procedures/800/vadoc-op-864-1.pdf (last visited Nov. 19, 2020). Consistent with that new policy, Gentry has been transferred to the Buckingham Correctional Center, where, according to VDOC, he now is "permitted to grow out his beard to his desired length" without penalty. Appellees' Br. 12–13.

**B.**

In July of 2017, Gentry filed a verified pro se complaint under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc *et seq.*, challenging VDOC's grooming policy and its application to him. The

5

defendants who remain in the case are the Nottoway correctional officers involved in the forcible trimming of Gentry's beard, Nottoway Warden Henry Ponton, Jr., and Chief of Corrections Operations for VDOC A. David Robinson.[1]  In his complaint, Gentry alleged that the grooming policy impermissibly burdened his right to religious practice, in violation of RLUIPA and the Free Exercise Clause of the First Amendment.  He also alleged that the defendants had discriminatorily enforced the grooming policy, applying it forcibly only against those who raised religious objections to shaving their beards, in violation of the Equal Protection Clause of the Fourteenth Amendment.[2]

Gentry sought monetary damages, as well as declaratory and injunctive relief.  With respect to injunctive relief, Gentry asked that the court "order[] VDOC to send [him] to where [he] can practice [his] religion fully and grow [his] beard."  J.A. 23.  He specifically requested that VDOC be directed to transfer him to an out-of-state prison system or "open up a hair unit" in a lower-security prison in Virginia.  J.A. 23–24.  Gentry also requested "[a]ny additional relief" the court deemed "just, proper, and equitable."  J.A. 24.

After the defendants moved for summary judgment, Gentry asked the district court to appoint him counsel.  The district court denied that request, instead treating Gentry's

---

[1] In a preliminary ruling, the district court dismissed the other defendants – VDOC and Nottoway – from the case, and Gentry has not appealed that decision.

[2] Gentry's comprehensive complaint also challenged his forced shaving under the Fourth and Eighth Amendments and the Due Process Clause, and alleged that the grooming policy's different treatment of male and female prisoners violated the Equal Protection Clause.  The district court granted summary judgment to the defendants on those claims, and Gentry does not pursue them on appeal.

6

verified pro se complaint as "the equivalent of an opposing affidavit for summary judgment purposes." *Gentry v. Va. Dep't of Corr.*, No. 1:17cv766 (LO/IDD), 2019 WL 2288438, at *1 n.1 (E.D. Va. May 28, 2019) (quoting *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991)). The district court then granted the defendants' motion for summary judgment.

The court began by disposing of Gentry's RLUIPA claim without reaching its merits. As the district court explained, under RLUIPA, Gentry could seek only injunctive relief, not monetary damages. To the extent Gentry's requested injunction would order his transfer out of VDOC custody, the court held, it could not be granted. And because Gentry was at that point in the VHU, where he was "able to fully grow his beard," his request that he be allowed to practice his religion fully and grow his beard was moot. *Id.* at *4.

The district court next granted summary judgment to the defendants on Gentry's Free Exercise Clause claim, this time on the merits. Applying the four-factor standard laid out in *Turner v. Safley*, 482 U.S. 78 (1987), it found that VDOC's policy of forcibly shaving non-compliant offenders on intake was "reasonably related to legitimate penological interests" as a matter of law. *Id.* at *4–5. Finally, the district court turned to Gentry's equal protection claim, which alleged that the grooming policy was discriminatorily enforced because only "religious people" were subjected to forcible shaving or haircuts. *Id.* at *8. Here, the district court held that Gentry failed to state a claim because he alleged that similarly situated individuals – religious objectors to the grooming policy – were treated as he was and forced to cut their hair. *Id.*

Gentry filed a timely notice of appeal.

## II.

Now represented by counsel, Gentry argues on appeal that the district court erred in its disposition of his claims under RLUIPA, the Free Exercise Clause, and the Equal Protection Clause. We review a summary judgment ruling de novo, "using the same standard applied by the district court." *Brooks v. Johnson*, 924 F.3d 104, 111 (4th Cir. 2019) (citation omitted). Under that standard, "a court should grant summary judgment only if, taking the facts in the best light for the nonmoving party, no material facts are disputed and the moving party is entitled to judgment as a matter of law." *Id.* (citation omitted).

This is a complicated case, arising from a pro se complaint raising multiple claims against various aspects of a prison grooming policy that has changed significantly over time. We appreciate the work of the district court in sifting through those claims, devoting substantial attention to many that are finally resolved and no longer at issue on appeal. But with the benefit of Gentry's able appellate counsel, we conclude that important aspects of Gentry's RLUIPA and equal protection claims require further attention. Accordingly, we vacate and remand in part so that the district court may fully evaluate those claims in the first instance. We agree with the defendants, however, that Gentry's request for damages under the Free Exercise Clause is barred by qualified immunity, making it unnecessary to further consider the free exercise claim.

## A.

We begin, like the district court, with RLUIPA.  Section 3 of RLUIPA provides that governments – including state entities and officials, *see* 42 U.S.C. § 2000cc-5(4)(A) – may not:

> impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that the imposition of the burden on that person –
>
> > (1) is in furtherance of a compelling government interest; and
> >
> > (2) is the least restrictive means of furthering that compelling government interest.

*Id.* § 2000cc-1(a).  To make out a RLUIPA claim, "the inmate bears the initial burden of establishing that a prison policy substantially burdens his or her ability to practice in accordance with a sincerely held religious belief." *Greenhill*, 944 F.3d at 250.  After that initial showing, "the burden shifts to the government to show that the prison policy is the least restrictive means of furthering a compelling governmental interest." *Id.*  Because Gentry has pled no facts alleging that the defendants' actions affected interstate commerce, we presume these restrictions apply to VDOC – "a state agency that receives federal financial assistance" – and its officials by virtue of Congress's Spending Clause authority. *Madison v. Virginia*, 474 F.3d 118, 124 (4th Cir. 2006); *see also* 42 U.S.C. § 2000cc-1(b)(1).  As the district court explained, when RLUIPA is invoked in this context, plaintiffs may not pursue claims for money damages against state officials, and instead are limited to equitable relief.  *See Sossamon v. Texas*, 563 U.S. 277, 288 (2011) (holding damages unavailable for official-capacity claims); *Rendelman v. Rouse*, 569 F.3d 182, 189 (4th Cir.

9

2009) (same for individual-capacity claims); *Wall v. Wade*, 741 F.3d 492, 496 n.5 (4th Cir. 2014).

Given this constraint, the district court rejected Gentry's RLUIPA claim on the ground that the requested injunctive relief either was unavailable or, alternatively, already had been provided. On the first point, there is no dispute between the parties, and we agree: To the extent Gentry sought an injunction ordering the defendants to transfer him out of VDOC custody and to "Delaware State Prisons, North Carolina State Prisons, or [to federal custody]," J.A. 23, that relief was unavailable. Gentry, presumably "in custody pursuant to a Virginia state court conviction," could not be "transferred out of VDOC custody as requested." *Gentry*, 2019 WL 2288438, at *4.

The second point is more complicated. To the extent Gentry sought an order directing that he be housed *within* VDOC in a place where he could "fully grow his beard," the district court held that request was moot because Gentry was in the VHU, where he already could grow a beard. *Id.* A case is moot under Article III, depriving a federal court of jurisdiction, when there is no concrete case or controversy, and court action would not actually "affect the matter in issue." *See Williams v. Ozmint*, 716 F.3d 801, 809 (4th Cir. 2013) (citation omitted). So if, as the district court assumed, Gentry's placement in the VHU already had provided the relief sought, then his request for injunctive relief indeed would be moot.

But as Gentry argues on appeal, it is not clear that his request for relief was limited to what he was given in the VHU: the right to grow a beard so long as he "stay[ed] in restrictive housing" and forfeited "the privilege of returning to a general population

10

environment." *Greenhill*, 944 F.3d at 252. Instead, Gentry contends, what he was seeking was an injunction directing that he be permitted to grow a beard, consistent with his religious obligations and *free* of penalty for violating the grooming policy.

Because Gentry filed his complaint pro se, we construe it liberally. *See, e.g.*, *Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 722 (4th Cir. 2010). So viewed, there is some support for Gentry's reading. Gentry filed his complaint while he was in the VHU, alleging that he was "still [a]ffected by" VDOC's grooming policy. J.A. 18. In his prayer for relief, he suggested as one alternative that the district court order VDOC to "open up a hair unit" at a lower-security prison, J.A. 24 – presumably, a place within VDOC where prisoners could grow beards without being subject to heightened security measures. And Gentry's prayer for "[a]ny additional relief" deemed "just, proper, and equitable," J.A. 24, likewise could support a more generous reading of the requested injunction. *See Wall*, 741 F.3d at 496 n.6 (reading similar general language to support a pro se plaintiff's request for injunctive relief). On remand, the district court may consider whether Gentry's complaint, liberally construed, sought relief beyond placement in the VHU and thus presented a live controversy.

On appeal, the defendants focus on a different mootness issue: Even assuming that Gentry's requested injunction was not moot when the district court ruled, they argue it is moot now – because, under VDOC's new policy, the VHU has been eliminated and Gentry is free to grow his beard without penalty and while housed in the general population. It is true, as the defendants explain, that principles of mootness apply "to all stages of a federal case," so that a "change in factual circumstances can moot a case on appeal, such as when

11

the plaintiff receives the relief sought in his or her claim." *Williams*, 716 F.3d at 808–09. And that rule at least is implicated here, where the 2019 change in VDOC's grooming policy appears to have given Gentry all that he sought in the most generous reading of his complaint: a transfer out of the VHU to a place where he could grow a beard consistent with his religious beliefs and without suffering any penalty as a result.

In response, Gentry invokes the voluntary cessation exception to the mootness doctrine. "It is well established that a defendant's 'voluntary cessation of a challenged practice' moots an action only if 'subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Wall*, 741 F.3d at 497 (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 189 (2000)). The "heavy burden" of showing that a challenged prison policy will not be reinstated falls on the prison defendants, *id.* (citation omitted), and Gentry insists they cannot meet that burden here. VDOC's grooming policy is not final but instead in constant flux, Gentry argues; amended several times already during his incarceration, the policy by its own terms requires periodic updates and rewrites. *See Porter v. Clarke*, 852 F.3d 358, 365 (4th Cir. 2017) (applying voluntary cessation exception to prison policy that is reviewed annually and rewritten every three years). And, he notes, not all of VDOC's changes have been in the direction of greater religious accommodation: Starting in late 2016, VDOC exempted religious objectors from its policy of forcible shavings at intake, but its latest policy eliminates that exemption at the same time that it does away with the VHU. An injunction remains necessary, Gentry concludes, to limit the defendants'

12

discretion to return to their prior policy, or some similar policy that once again would penalize him for growing a beard.

The defendants counter that there is no reason to believe they will reinstate the policy under which Gentry was confined to the VHU. Gentry was transferred out of the VHU under a system-wide policy change, they argue, not as a "manipulative" response to litigation that will be undone once the case is over. *See Porter*, 852 F.3d at 364 (explaining that voluntary cessation doctrine "seeks to prevent a manipulative litigant immunizing itself from suit indefinitely") (citation and internal quotation marks omitted). And while prison officials in cases like *Porter* refused to commit to keeping revised policies in place, *see id.* at 365, the defendants' counsel here assured us at oral argument that VDOC "will not return to the 2016 policy" under which Gentry was held at the VHU, at least "as it existed" then. Oral Arg. at 43:37–43:48.

We think it best that the district court consider this mootness issue in the first instance. Because all the prior litigation here was conducted before VDOC changed its grooming policy in 2019, the district court has had no opportunity to address this issue or any related factual questions. *See Grimm v. Gloucester Cnty. Sch. Bd.*, 869 F.3d 286, 290–91 (4th Cir. 2017) (remanding so that district court may consider in first instance whether case has become moot on appeal). And while we of course have no reason to doubt the defendants' statement at oral argument, we have held before that appellate assurances are not a substitute for actual "evidence establishing that the practice . . . has been terminated once and for all." *Wall*, 741 F.3d at 497. The district court is better positioned than we are to determine the precise scope of the defendants' commitment. Under these circumstances,

13

it is most prudent to "adhere . . . to the principle that the district court should have the first opportunity to perform the applicable analysis." *Fusaro v. Cogan*, 930 F.3d 241, 263 (4th Cir. 2019).

**B.**

Gentry also challenged VDOC's grooming policy under the Free Exercise Clause. Critically, the Free Exercise Clause provides prisoners like Gentry with less protection than RLUIPA does. *See Holt v. Hobbs*, 135 S. Ct. 853, 859–60 (2015); *Greenhill*, 944 F.3d at 253. Under the Free Exercise Clause, prison officials must "reasonably accommodate an inmate's exercise of sincerely held religious beliefs." *Greenhill*, 944 F.3d at 253. But because prison officials are entitled to significant deference in their "judgments concerning institutional operations," *Turner*, 482 U.S. at 89 (citation omitted), even a prison regulation that "substantially burdens a practice of sincerely held religious beliefs 'is valid if it is *reasonably related* to legitimate penological interests,'" *Greenhill*, 944 F.3d at 253 (quoting *Turner*, 482 U.S. at 89). When it comes to injunctive relief, in other words, the Free Exercise Clause offers Gentry nothing he cannot more readily obtain under RLUIPA.

What his free exercise claim does offer Gentry is a chance to recover monetary damages: While RLUIPA provides only for equitable relief in this context, a successful § 1983 claim based on the Free Exercise Clause brings with it the prospect of damages. *See Wall*, 741 F.3d at 496 n.5, 498 (considering claim for damages under Free Exercise Clause but not RLUIPA). We agree with the defendants, however, that no damages are available here. We may assume – contrary to the reasoned holding of the district court, *see Gentry*, 2019 WL 2288438, at *4–5, and for purposes of this appeal only – that there are

14

genuine issues of material fact that would preclude granting summary judgment to the defendants on Gentry's free exercise claim. Even so, as the defendants argue, the recovery of damages would be precluded by the doctrine of qualified immunity. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that courts may apply qualified immunity doctrine without first deciding whether there has been a constitutional violation).

"Qualified immunity shields federal and state officials from monetary damages" unless a plaintiff can show both the violation of a constitutional right *and* "that the right was clearly established at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation and internal quotation marks omitted). "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (alteration in original) (citation and internal quotation marks omitted). While "[w]e do not require a case directly on point, . . . existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741; *see Crouse v. Town of Moncks Corner*, 848 F.3d 576, 583 (4th Cir. 2017).

Under the "clearly established" standard, this is not a particularly close case. Gentry has pointed to no precedent, and we have identified none, that would have put a reasonable prison official on notice, at the time of the relevant events, that VDOC's grooming policy violated the Free Exercise Clause. If anything, the precedent that existed at the time pointed in the opposite direction. In *Hines v. South Carolina Department of Corrections*, 148 F.3d 353, 358 (4th Cir. 1998), for instance, our court had rejected a very similar Free Exercise Clause challenge to a prison policy that required short hair and shaved faces,

finding that the policy was "an eminently rational means" of achieving legitimate penological interests. And several district courts had found that past iterations of the VDOC grooming policy at issue here passed muster under the First Amendment. *See, e.g.*, *Faver v. Clarke*, No. 7:16-cv-00287, 2017 WL 4415708, at *4–5 (W.D. Va. Sept. 29, 2017) (concluding, after considering *Turner* factors, that plaintiff had not met his burden in challenge to grooming policy); *McClelland v. Sheriff's Deputy*, No. 2:00-CV-807, 2001 WL 34826228, at *3 (E.D. Va. Mar. 19, 2001) (rejecting Rastafarian plaintiff's free exercise challenge to forcible grooming). Indeed, after the defendants argued for qualified immunity in their brief to this court, Gentry effectively conceded the "clearly established" point, arguing in his reply brief only for the merits of his free exercise claim.

Because no law or precedent at the time of the challenged conduct "clearly established" that VDOC's grooming policy violated the constitutional rights of religious objectors like Gentry, the defendants are entitled to qualified immunity on this claim. For that reason, we affirm the district court's grant of summary judgment under the Free Exercise Clause.[3]

---

[3] There is no need to remand for consideration of whether Gentry can be understood to have sought equitable as well as monetary relief under the Free Exercise Clause. Any injunctive remedy Gentry could request under the Free Exercise Clause would be coextensive with what he seeks under RLUIPA. If the district court determines that it has before it a live request for injunctive relief, then it will review the merits of Gentry's claim under RLUIPA – giving Gentry the benefit of that statute's strict-scrutiny standard, which is more plaintiff-friendly than the *Turner* standard for prisoners' free exercise claims. *See Wall*, 741 F.3d at 499 n.10.

Finally, we turn to Gentry's equal protection claim. According to Gentry, the defendants violated the Equal Protection Clause by discriminatorily enforcing the grooming policy provision for forcible shaving at intake, applying it only against those who objected for religious reasons.

There is no dispute as to the standard that applies here. To make out a discriminatory enforcement claim under the Equal Protection Clause, Gentry must show (1) "that he has been treated differently from others with whom he is similarly situated[,]" and (2) "that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). Only then will courts consider, in the prison context, whether a classification was "reasonably related to legitimate penological interests." *Id.* at 655 (quoting *Turner*, 482 U.S. at 89).

The district court held that Gentry's allegations failed to state a claim under the first prong of this standard.[4] The court acknowledged Gentry's allegation that "he was treated differently from non-religious inmates," and in particular from "inmates from the Virgin Islands" whose hair was not cut on intake. *Gentry*, 2019 WL 2288438, at *8; *see also* J.A. 17, 23 (allegations). But Gentry had "pled himself out of stating a . . . claim," the district court concluded, because he alleged that the prisoners who were similarly situated to him

---

[4] Because it considered only the allegations in Gentry's complaint, the court, though nominally granting summary judgment, effectively entered judgment on the pleadings. *See Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015); *Johnson v. Pelker*, 891 F.2d 136, 139 n.2 (7th Cir. 1989).

– which the court described as those who objected to the grooming policy on religious grounds – were treated the same as he was, and forcibly shaved or trimmed. *Gentry*, 2019 WL 2288438, at *8.[5]

This analysis will not suffice to dispose of Gentry's claim on the pleadings. The "similarly situated" prisoners, for purposes of Gentry's discriminatory enforcement claim, are not other religious objectors who were forcibly shaved, but *non*-religious objectors who were *not* forcibly shaved. And construed liberally, *see Brown*, 612 F.3d at 722, Gentry's pro se complaint could be read to allege precisely that: that a specific, similarly situated reference group – individuals transferred from the Virgin Islands and "housed in the VHU" – did not "ha[ve] their hair cut during initial intake," J.A. 17. Whether that allegation is enough under the first prong of the analysis – in particular, whether it may be inferred from Gentry's complaint, construed generously, that the Virgin Islands prisoners in question *should* have been subject to forcible trims because of the length of their hair – is a question we leave for the district court on remand.

On appeal, the defendants focus primarily on the second prong of the discriminatory enforcement standard, arguing that even if Gentry adequately alleged differential treatment, he entirely failed to allege "intentional or purposeful discrimination," *see Morrison*, 239 F.3d at 654, and, "[m]aking matters worse, . . . did not tie his allegation to

---

[5] In its conclusion, the district court referred to Gentry's failure to state a "due process claim," rather than the equal protection claim it described in the immediately preceding paragraphs. *See Gentry*, 2019 WL 2288438, at *8. Any confusion regarding the district court's holding can be clarified on remand.

18

any particular defendant." Appellees' Br. 43. But the defendants have overlooked a crucial paragraph of Gentry's complaint, in which he ties his discriminatory enforcement claim directly to defendant "A. David Robinson," VDOC's Chief of Corrections Operations, and alleges that Robinson was "fully aware" that Muslim men grow beards "but authorized the use of force to cut [their] hair to punish them." J.A. 20. Again, we leave to the district court on remand a full evaluation of Gentry's complaint to determine whether it adequately states an equal protection claim for discriminatory enforcement, keeping in mind the "well-settled rule that courts should construe pro se complaints liberally." *See Covey v. Assessor of Ohio Cnty.*, 777 F.3d 186, 194 (4th Cir. 2015).

## III.

For the foregoing reasons, we affirm the district court's grant of summary judgment to the defendants on Gentry's free exercise claim, vacate the grant of summary judgment on Gentry's RLUIPA and equal protection claims, and remand for further proceedings consistent with this opinion.

*AFFIRMED IN PART, VACATED IN PART,*
*AND REMANDED*